_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                                    Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

<u>  Rolls Royce Paschal  </u>                                         <u>    N/A    </u>
Deputy Clerk                                                            Court Reporter

Attorneys Present for Plaintiff:                    Attorneys Present for Defendant:

Not Present                                                        Not Present

**PROCEEDINGS: ORDER DENYING PLAINTIFF'S MOTION TO REMAND [16]**

In this putative class action, Plaintiff Alejandro Urbina alleges claims against Defendant BMO Bank National Association for (1) unfair competition in violation of California Business & Professions Code § 17200, and claims under the California Labor Code for failure to (2) pay minimum wages, (3) pay overtime wages, (4) provide required meal periods and (5) rest periods, (6) provide accurate itemized statements, (7) reimburse employees for required expenses, (8) provide wages when due, and (9) pay sick pay wages. (*See generally* Dkt. 1-1 ("Complaint" or "Compl.").) Defendant removed the case to this court, arguing that the court has jurisdiction under the Class Action Fairness Act ("CAFA"). (Dkt. 1 ("Notice of Removal" or "NOR").)

Now before the court is Plaintiff's Motion to Remand, in which Plaintiff argues Defendant makes an insufficient showing that CAFA's amount in controversy is met. (Dkt. 16 ("Motion" or "Mot.").) Defendant opposes the motion. (Dkt. 21 ("Opposition" or "Opp.").) Plaintiff filed a reply in support of the Motion. (Dkt. 22 ("Reply").) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the hearing set for July 23, 2026 is **VACATED** and off calendar. Based on the record, as applied to the relevant law, the court **DENIES** the Motion.

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                          Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

## I.    Legal Standard

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).  CAFA generally permits a federal district court to exercise subject matter jurisdiction over a putative class action in which: (1) the amount in controversy exceeds $5,000,000; (2) the number of members of all purported classes of plaintiffs totals 100 or more persons; and (3) any member of a proposed class of plaintiffs differs in citizenship from any defendant. 28 U.S.C. § 1332(d); *Dart Cherokee*, 574 U.S. at 84-85. "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89.

To determine the amount in controversy, "courts first look to the complaint" and generally find the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (cleaned up).  In the absence of an amount in controversy alleged in a complaint, "a defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 87).  "When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied.'" *Jauregui*, 28 F.4th at 992 (quoting *Dart Cherokee*, 574 U.S. at 88).  "[T]he removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." *Id*. at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).  Assumptions must have "some reasonable ground underlying them," and "may be reasonable if [they are] founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (cleaned up).

In summary, the Ninth Circuit has set forth "three principles that apply in CAFA removal cases." *Id*. at 922.  "First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                                  Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

(quoting *Ibarra*, 775 F.3d at 1197).  "Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Id*. (citing *Ibarra*, 775 F.3d at 1197-99).  "Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."  *Id*. (citing *Fritsch v. Swift Transp. Co. of Ariz*., LLC, 899 F.3d 785, 794 (9th Cir. 2018)).

After a removing defendant alleges the amount in controversy requirement is met, "the plaintiff can contest the amount in controversy by making either a 'facial' or a 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus*., *Inc*., 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, *Inc*., 974 F.3d 959, 964 (9th Cir. 2020)).  "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Salter*, 974 F.3d at 964 (9th Cir. 2020) (quoting *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014)).  In evaluating a facial attack, "the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.'" *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.").  By contrast, "[a] factual attack 'contests the truth of the . . . allegations' themselves." *Harris*, 980 F.3d at 699 (alteration in original).  "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id*.  "Both parties may submit evidence supporting the amount in controversy before the district court rules." *Harris*, 980 F.3d at 699 (citations omitted).

## II.    Discussion

With the Notice of Removal, Defendant submitted a declaration evidence in the form of a declaration from Angela Perez, Defendant's "U.S. Head of Employee Relations."  (Dkt. 2.) Ms. Perez provided preliminary estimates regarding the number of relevant non-exempt employees, their wages, and the number of those employees who had terminated their

3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                      Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

employment with Defendant.  (*Id.* ¶¶ 4-5.)  In the Notice of Removal, Defendant used those numbers and certain assumptions based on Plaintiff's allegations to calculate—while denying any liability—the possible amount in controversy on some of Plaintiff's claims.  (*See* Dkt. 1 ¶¶ 25-29.)  For example, Defendant calculated the amount in controversy on Plaintiff's untimely final wages claim as follows:

> Approximately 2,523 of the 4,130 putative class members have terminated their employment. (Perez Decl. ¶ 5.) Using the average hourly rate of $26.08 and conservatively estimating that each of these non-exempt employees worked an average of only eight hours per day despite Plaintiff's overtime allegations, the amount in controversy for Plaintiff's waiting time penalties claim is approximately **$15,791,961** ($26.08 x 8 x 30 x 2,523).

(NOR ¶ 26.)  Plaintiff argues that "the NOR is supported only by unreliable statements, unreasonable assumptions, missing information and data points, and a supporting declaration," meaning "Plaintiff cannot conduct even a preliminary analysis to verify or rebut Defendant's blanket claims of jurisdiction."  (Mot. at 4.)  The court is not persuaded.  Defendant's "notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements."  *Arias*, 936 F.3d at 922.  The court finds Defendant met this standard in the Notice of Removal.

The court also finds that Defendant met the required standard once Plaintiff challenged the amount in controversy.  *See Harris*, 980 F.3d at 699.  With the Opposition, Defendant submits another declaration from Ms. Perez.  (Dkt. 21-1 ("Perez Decl.").)  According to Ms. Perez, Defendant's "records reflect that [Defendant] employed approximately 4,087 individuals in non-exempt roles in the State of California from approximately April 15, 2022 to May 21, 2026," who "earned, on average, $54,248 annually or $26.08 per hour"; "worked an aggregate 1,027,672 shifts from April 15, 2022 to May 21, 2026," of which "1,007,881 exceeded 3.5 hours and 882,296 exceeded 6 hours"; and "received an aggregate 214,786 wage statements from April 15, 2022 to May 21, 2026," with "2,318 employees work[ing] 52,920 pay periods between April 15, 2025 and May 21, 2026."  (*Id.* ¶¶ 4-6.)  In addition, "1,776 of these 4,087 individuals separated their employment from BMO between April 15, 2023 and April 21,

4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                          Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

2026," and "[o]f these 1,776 individuals, at least 1,288 worked 30 or more hours each week across five weekly shifts."  (*Id.* ¶ 7.)

   Based on this data and certain assumptions described below that Defendant maintains are reasonable based on Plaintiff's allegations, Defendant calculates the amount in controversy as follows:

- Rest Break Claim: "Based on Plaintiff's assertion that BMO universally implemented an on-premises rest break policy, and thus even when BMO timely provided rest breaks they did not comply with California law, it is reasonable to assume a 100% violation rate."  (Opp. at 5-6.)  "BMO now submits evidence that the putative class members collectively worked an aggregate 1,007,881 shifts that exceeded 3.5 hours, thus qualifying for a rest break, from April 15, 2022 to May 21, 2026 and thus qualified for a rest break."  (*Id.* at 6 (citing Perez Decl. ¶ 5.)  "This demonstrates the amount in controversy for Plaintiff's rest break claim is **$26,285,536.48** (1,007,881 x $26.08)."  (*Id.* at 6-7.)  Even "[a]pplying a conservative 20% violation rate to all rest break eligible shifts worked by Plaintiff and the putative class members, the amount in controversy [on this claim] is **$5,257,107.30** (1,007,881 x $26.08 x 0.20)."  (*Id.* at 9.)

- Meal Break Claim: Assuming a 20% violation rate based on Plaintiff's allegations that he "was from time to time interrupted by work assignments while clocked out for what should have been [his] off-duty meal break," and applying that rate to the "882,296 shifts exceeding six hours from April 15, 2022 to May 21, 2026, which would have triggered at least one meal break," Defendant estimates "the amount in controversy [on this claim] is **$4,602,055.94** (882,296 x $26.08 x 0.20)."  (*Id.*)

- Waiting Time Penalties: Assuming based on listed authority "that every separated employee experienced at least one instance of unpaid wages triggering waiting time penalties," and "that each terminated employee would be entitled to the full 30-day penalty," and applying that to "evidence that 1,776 putative class members terminated their employment between April 15, 2023 and April 21, 2026," of which "at least 1,288 worked 30 or more hours each week across five shifts (i.e., at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                           Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

least six hours per shift)," Defendant estimates "the amount in controversy for Plaintiff's waiting time penalty claim is *at least* **$6,046,387.20** (1,288 x $26.08 x 6 x 30)." (*Id.* at 10-12.)  Even "[a]pplying a 20% violation rate reveals the amount in controversy for Plaintiff's waiting time penalty claim is *at least* **$1,209,277.44** ($6,046,387.20 x 0.20). (*Id.* at 14.)

- Inaccurate Wage Statements Claim: Assuming a 100% violation rate based on Plaintiff's allegation that Defendant "had a rule that prohibited employees from leaving the premises during rest breaks," and that Defendant "failed to identify the accurate total hours worked each pay period," Defendant "conservatively estimated that each putative class member received one inaccurate wage statement" to calculate "the amount in controversy for Plaintiff's wage statement claim [a]s **$5,176,100** (2,318 x $50 initial penalties + 50,602 x $100 subsequent penalties). (*Id.* at 14-15.)   Even "a 20% violation rate for the 52,920 wage statements issued between April 15, 2025 and May 21, 2026, results in an amount in controversy of **$1,035,220** ($5,176,100 x 0.20)." (*Id.* at 15.)

- Attorneys' Fees: Applying "[a] 25% percentage-of-recovery method to calculate the attorneys' fees in controversy," Defendant calculates attorney fees to be **$10,527,519.91** based on the higher violation rate estimates, or **$3,025,915.17** based on the lower violation rate estimates.  (*Id.* at 16-17.)

In summary, Defendant calculates an amount in controversy of **$52,637,599.53** with the higher violation rate estimates, and **$15,129,575.84** with the lower violation rate estimates.  (*Id.* at 17.)

Plaintiff argues Defendant's "evidence remains inadequate as Defendant has failed to provide any evidence regarding the actual number of non-compliant meal breaks based on the class members' time records, or the number of meal period premiums paid or the number of rest period premiums paid."  (Reply at 2 (emphasis removed).)  The court is not persuaded.  Even if Plaintiff is correct that Defendant's assumptions involving 100% violation rates are unreasonable, (*see* Reply at 2-3, 8), Plaintiff does not address the fact that even the lower estimates Defendant used produced a sufficient amount in controversy.  (*See, e.g.* Opp. at 9 (explaining that even "[a]pplying a conservative 20% violation rate to all rest break eligible

6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:26-cv-01281-FWS-PVC                    Date: July 10, 2026
Title: Alejandro Urbina v. BMO Bank National Association

shifts worked by Plaintiff and the putative class members" rather than a 100% violation rate, "the amount in controversy [on this claim] is **$5,257,107.30** (1,007,881 x $26.08 x 0.20)").) And the court concludes that, at the very least, Defendant's lower-violation-rate assumptions supporting its calculation of the amount in controversy are reasonable and sufficiently supported by evidence.  *See Arias*, 936 F.3d at 926 (finding sufficient evidence when "Marriott's notice of removal included personnel and payroll data (e.g., number of employees meeting class description, average rate of pay, and number of workweeks worked during the class period)"; "[w]ith that data, Marriott estimated the amount in controversy by making assumptions about the frequency of violations of the sort alleged in the complaint"; and "Marriott tied its assumed violation rates to the complaint"); *see, e.g.*, *Mills v. Rescare Workforce Servs.*, 2022 WL 843461, at \*9 (C.D. Cal. Mar. 22, 2022) ("The court finds Defendants' assumptions are plausible and present a reasonable estimate of Defendants' maximum potential liability and the maximum damages the putative class could reasonably recover."); *Avila v. Northwood Hosp. LLC*, 2024 WL 416366, at \*4 (C.D. Cal. Feb. 5, 2024) (denying motion to remand when the defendant's calculation of amount in controversy in wage-and-hour class action was supported by the allegations in the complaint).

"[B]ecause [D]efendant[] relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeds $5 million, [Defendant has] met [its] burden of proof." *LaCross*, 775 F.3d at 1201.

**III.    Disposition**

For the foregoing reasons, the Motion is **DENIED**.